IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWARD A. MALONE | : |
| Plaintiff, | : |
| v. | : Case No.: 06cv00587 (PLF) |
| LEVY PREMIUM FOODSERVICE, L.P., et al., | : |
| Defendant. | : |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS

COMES NOW, Plaintiff, Edward Malone, by and through undersigned counsel Janelle N. Richards, Esq., Jimmy A. Bell, Esq., and the Law Office of Jimmy A. Bell, P.C., and respectfully submits this Opposition to Defendant's Partial Motion to Dismiss.

For cause, the Plaintiff states the following:

### STATEMENT OF FACTS

In February of 2006 Plaintiff spoke to Nicole Hallcomb concerning his birthday party, which was to take place in the Acela Club on March 21, 2006. Complaint at ¶ 10-11. Plaintiff also spoke to Matt Long concerning the party scheduled for March 21, 2006. Id. at ¶ 12. Neither Mr. Long, nor Ms. Hallcomb required Plaintiff to sign a dining contract or asked that Plaintiff act as a guarantor for his guests. Id. at ¶ 13.

On the night of the party, Plaintiff specifically informed Mr. Kenny Nichols, a supervisor for the Acela Club, that each table was to be billed separately. Id. at 14. Mr. Nichols agreed to bill each table separately. Id. at 15. Although Mr. Nichols agreed to bill each table separately, at approximately 9:30 p.m. an employee of the Defendants



approached the Plaintiff and requested that he pay a bill for $38.00. Id. at ¶ 18. Because Defendants' employee had allowed the patron to leave without paying the $38.00 bill, Plaintiff paid the bill in a show of goodwill. Id. at ¶24.

Plaintiff then left the club to accept a birthday gift from one of his guests. Id. at ¶ 25. Plaintiff was subsequently refused re-entry despite the fact that his belongings were still in the club. Id. at ¶¶ 28-30. Plaintiff had to contact Mr. Long to gain re-entry to the Acela Club. Id. at ¶ 31. It was at that time that Mr. Long informed Plaintiff that he was expected to pay the tabs of unknown guests who were allowed to leave the club without paying for their dinner despite Mr. Nichols agreement to bill each table separately. Id. at ¶¶ 32-34. Plaintiff reminded Mr. Long that Mr. Nichols had agreed to bill each table separately. Id. Plaintiff had to wait twenty minutes before being allowed to enter the club to retrieve his belongs. Id. at ¶ 35.

Upon entering the club, Plaintiff was confronted by Nichols's demands that Plaintiff pay the bill for guests that had not been billed properly by Defendants. Id. at ¶¶ 44, 47. Plaintiff was then approached by Defendants' security guard demanding Plaintiff's identification and threatening Plaintiff with arrest if he did not comply with Defendants' security guard's request. Id. at ¶¶ 48-50. Plaintiff provided the security guard with his identification. Id. at ¶ 51.

Mr. Nichols then approached Plaintiff with a bill for over $ 400.00, admitting that he had agreed to bill each table separately, but stating to Plaintiff that, "it didn't work out and now you're responsible for your guests." Id. at ¶ 54. Plaintiff and a friend, Dr. Martin, agreed to split the remaining bill, with Plaintiff paying $230.00 and Dr. Martin paying the remainder. Id. at ¶ 64. Mr. Nichols presented Plaintiff with a receipt reflecting



payment in the amount of $230.00. Id. at ¶ 65. Nichols in fact charged Plaintiff's credit card for $264.00. Id. at ¶ 66.

After paying the bill, Plaintiff asked to speak to Mr. Nichols to explain that Plaintiff had not tried to take advantage of the club and that Mr. Nichols aggressive behavior was not necessary. Id. at ¶ 69. Mr. Nichols walked away from the Plaintiff and told the security guard, "Can you please get this nigger out of my face!" Id. at ¶ 70. When Plaintiff asked to be treated with dignity, the security guard responded by stating, "I'll beat you up right here and nothing will happen. Just get out! If you keep talking I could arrest you for disorderly conduct. And how about resisting arrest?" Id. at ¶ 73.

Following this incident, some of Plaintiff's guests reported that they had in fact received separate bills, while others reported that they never received any bill or had to gain the attention of inattentive wait staff to request a bill. Id. at ¶¶ 82, 90, 91.

## ARGUMENT

### I.    STANDARDS OF REVIEW

#### B.    Motion to Dismiss According to Rule 12(b)6.

Under Federal Rule of Civil Procedure 12(b)(6), a court should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint, and not its supporting facts. Neitzeke v. Williams, 490 U.S. 319, 326-27 (1989). Fed. R. Civ. P. 8(a)(2) only requires Plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz v. Sorema, 534 U.S. 506, 512 (2002). Granting Defendant's motion at this

3



stage in litigation would, in effect, allow Defendants to circumvent the mandates espoused by a unanimous Supreme Court. Justice Thomas, writing for the Court, explained: "[t]his simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512.

The Court's rationale envisions a timeline, with a Plaintiff's requirement to meet notice pleading standards in the early stages, discovery in the middle stages up to and including depositions of plaintiffs and any motions for summary judgment once unmeritorious claims are evinced through fruitful discovery. Plaintiff has pled facts sufficient to meet the standards set forth in Federal Rule of Civil Procedure 8(a)(2).

## II. DEFENDANT'S INSTANT MOTION MUST BE DENIED BECAUSE PLAINTIFF'S COMPLAINT SUFFICIENTLY DEMONSTRATES HIS ENTITLEMENT TO RELIEF.

### A. Plaintiff has met the Pleading Standard Required by Federal Rule of Civil Procedure 8(a)(2), thus, this Court Must Deny Defendant's Instant Motion as to Counts III and IV of Plaintiff's Complaint.

Plaintiff has plead facts sufficient to advance his claims of negligent supervision (Count III) and negligent training (Count IV). A claim alleging negligent supervision and/or training does not seek recovery under a theory of respondeat superior, instead, Plaintiff is alleging that Defendant directly negligent in the supervision and training of its employees and/or agents. See Brown v. Argenbright Security, Inc., 782 A.2d 752, 759-60 (D.C. 2001). In order to state the claims of negligent supervision and negligent training, Plaintiffs must show that: (1) Defendant's employees behaved in an incompetent manner; (2) Defendant had actual or constructive knowledge of this incompetent behavior; and (3) despite having this actual or constructive knowledge, Defendant failed to adequately

4



supervise and train its employees. Mitchell v. DCX, Inc., 274 F. Supp. 2d 33, 50-51 (D.D.C. 2003).

                1.      Defendant Does Not Dispute that its Employees/Agents Acted in an Incompetent Manner.

Defendant does not dispute that its employees and/or agents acted in an incompetent manner. Plaintiff Complaint, however, does itself meet the first prong of the above analysis as Plaintiff has alleged Defendants' employees acted in a negligent and incompetent manner when Plaintiff was confronted by Nichols's demands that Plaintiff pay the bill for guests that had not been billed properly by Defendants. Complaint at ¶¶ 44, 47. Plaintiff was then approached by Defendants' security guard demanding Plaintiff's identification and threatening Plaintiff with arrest if he did not comply with Defendants' security guard's request. Id. at ¶¶ 48-50. Plaintiff provided the security guard with his identification. Id. at ¶ 51.

Mr. Nichols then approached Plaintiff with a bill for over $400.00, admitting that he had agreed to bill each table separately, but stating to Plaintiff that, "it didn't work out and now you're responsible for your guests." Id. at ¶ 54. Plaintiff and a friend, Dr. Martin, agreed to split the remaining bill, with Plaintiff paying $230.00 and Dr. Martin paying the remainder. Id. at ¶ 64. Mr. Nichols presented Plaintiff with a receipt reflecting payment in the amount of $230.00. Id. at ¶ 65. Nichols in fact charged Plaintiff's credit card for $264.00. Id. at ¶ 66.

After paying the bill, Plaintiff asked to speak to Mr. Nichols to explain that Plaintiff had not tried to take advantage of the club and that Mr. Nichols aggressive behavior was not necessary. Id. at ¶ 69. Mr. Nichols walked away from the Plaintiff and told the security guard, "Can you please get this nigger out of my face!" Id. at ¶ 70.



When Plaintiff asked to be treated with dignity, the security guard responded by stating, "I'll beat you up right here and nothing will happen.  Just get out!  If you keep talking I could arrest you for disorderly conduct.  And how about resisting arrest?" Id. at ¶ 73.  Because Defendant does not dispute that its employees and/or agents acted in an incompetent manner and Plaintiff's Complaint alleges facts sufficient to comply with Fed. R. Civ. P. 8(a), Plaintiff has demonstrated that he can meet the first prong of the negligent supervision and training analysis.

        2.        Defendants had Actual Knowledge of the Incidents Detailed in Plaintiff's Complaint.

Plaintiff likewise meets the second required prong because Defendants had actual knowledge of its employees' treatment of Plaintiff.  Defendant's contention is that because Mr. Long was not present during this incident, Defendant Levy did not have knowledge of the incidents taking place. Defendant's Motion at 6.  However, Plaintiff's allegations make clear that Defendant's negligent supervision and training caused Plaintiff to be fasley imprisoned, forced to pay a bill that was not his own, and to ultimately be called a nigger. Complaint at ¶¶ 115-125.  Mr. Long had actual knowledge that Mr. Nichols had agreed to bill each table separately and further had actual knowledge that Mr. Nichols was attempting to hold Plaintiff responsible for bills that were not his own because Plaintiff made Mr. Long aware of these facts when Plaintiff was seeking re-entry to the club to retrieve his belongings.  Id. at ¶¶ 32- 34.  Furthermore, Mr. Nichols, himself a supervisor for the Acela Club, was present when Defendants' security guard demanded Plaintiff's identification, and threatened to arrest Plaintiff twice.  Id. at ¶¶ 48 – 50, 55.  In fact, it was at the specific direction of Mr. Nichols, after he



called the Plaintiff a nigger, that Defendants' security guard threatened to beat the Plaintiff up if he did not leave the club. Id. at ¶¶ 70, 73.

Defendant's reliance on Brown v. Argenbright Security, Inc., 782 A.2d 752 (D.C. 2001) and Alqahtani v. George Washington University, Civ. No. 95-803, 1996 U.S. Dist. LEXIS 4213 (D.D.C. 1996) is misplaced as both cases are distinguishable from the instant case. In Brown, the District of Columbia Court of Appeals concluded that the trial court had not erred in determining that there were not sufficient facts present to support an inference of negligent supervision where the assault complained of did not occur in the presence of a person with supervisory authority over the security guard. Brown, 782 A.2d at 760. Unlike in Brown, the acts alleged in Plaintiff's Complaint did not occur outside of the presence of a person with supervisory authority as Plaintiff made Mr. Long aware of the situation while it was occurring, Complaint at ¶¶ 32- 34, and Mr. Nichols, himself a supervisor, was present Defendants' security guard demanded Plaintiff's identification, and threatened to arrest Plaintiff twice, Id. at ¶¶ 48 – 50, 55, and in fact, directed Defendants' security to "get this nigger out of my face!" Id. at ¶ 70. Moreover, Defendant cannot escape liability for the actions of its security guard by now claiming that said guard is not employed by the Defendant. Defendant's Motion at 6, fn. 7. Brown makes clear, that while most cases analyze the claims of negligent supervision and training in the scope of an employer/employee relationship, "it is clear from the Restatement and other authorities that a claim of negligent supervision does not require proof that the supervised person was also an employee or agent." Brown, 782 A.2d at 760.

7



In <u>Alqahtani</u>, the plaintiff alleged that an office employee in the defendant's Office of International Student Services requested a bribe to secure the plaintiff's admission and made derogatory statements. 1996 U.S. Dist. LEXIS 4213 at 4.  The plaintiff reported his allegations to the Assistant Director of Admissions. <u>Id.</u> at 3.  This Court concluded that the plaintiff had not alleged any facts upon which to conclude that the defendant knew or should have known of its employees conduct. <u>Id.</u> at 11.  The instant case can be distinguished from <u>Alqahtani</u> in that, as discussed above, both Mr. Long and Mr. Nichols, a supervisor for the Acela club, had actual knowledge of the events alleged in Plaintiff's Complaint.  <u>Alqahtani</u> does not state whether the Assistant Director of Admissions exercised supervisory authority over the Office of International Student Services's employee.  Moreover, unlike in the instant case, even if the plaintiff had in fact informed a supervisor, it was not done contemporaneously with the alleged incident as was the case here.  Thus, unlike in <u>Brown</u> and <u>Alqahtanit</u>, Defendants had actual knowledge of the incidents described in Plaintiff's Complaint as Mr. Long was informed as the events unfolded and Mr. Nichols was present when Defendants' security guard threatened the Plaintiff on at least three different occasions.

       3.    <u>Despite Having Actual Knowledge of the Behavior of its Employess/Agents, Defendant Failed to Supervise and Properly Train said Employess/Agents.</u>

Finally, neither Mr. Long, nor Mr. Nichols took any action to address the behavior of Defendants' employees and security staff despite having knowledge of said behavior during the occurrence of the incident described in Plaintiff's Complaint.  Although, Plaintiff informed Mr. Long that Mr. Nichols was attempting to hold Plaintiff responsible for bills that were not his own and further, that Mr. Nichols had agreed to bill



each table separately, Mr. Long did not take any action to look into Plaintiff's statements or address the behavior of Mr. Nichols. Complaint at ¶¶ 32- 34.  Moreover, as discussed above, Mr. Nichols was present when Defendants' security guard demanded Plaintiff's identification, and threatened to arrest Plaintiff twice. Id. at ¶¶ 48 – 50, 55.  Mr. Nichols even directed Defendants' security guard to remove the Plaintiff from the club, stating, "Can you please get this nigger out of my face!" Id. at ¶ 70.  To which the security guard responded by stating, "I'll beat you up right here and nothing will happen.  Just get out! If you keep talking I could arrest you for disorderly conduct. And how about resisting arrest." Id. at ¶ 73.

Again, in Brown, the District of Columbia Court of Appeals concluded that the trial court had not erred in determining that there were not sufficient facts present to support an inference of negligent supervision where the assault complained of did not occur in the presence of a person with supervisory authority over the security guard. Brown, 782 A.2d at 760.  Unlike in Brown, the acts alleged in Plaintiff's Complaint did not occur outside of the presence of a person with supervisory authority as Plaintiff made Mr. Long aware of the situation while it was occurring, Complaint at ¶¶ 32- 34, and Mr. Nichols, himself a supervisor, was present Defendants' security guard demanded Plaintiff's identification, and threatened to arrest Plaintiff twice, Id. at ¶¶ 48 – 50, 55, and in fact, directed Defendants' security to "get this nigger out of my face!" Id. at ¶ 70. Moreover, Defendant cannot escape liability for the actions of its security guard by now claiming that said guard is not employed by the Defendant. Defendant's Motion at 6, fn. 7.  Brown makes clear, that while most cases analyze the claims of negligent supervision and training in the scope of an employer/employee relationship, "it is clear from the


created using BCL easyPDF Printer Driver — Click here to purchase a license to remove this image

Restatement and other authorities that a claim of negligent supervision does not require proof that the supervised person was also an employee or agent." Brown, 782 A.2d at 760.  In the instant case, this Court must deny the Defendant's Partial Motion to Dismiss because the Defendants had actual knowledge of both Mr. Nichols and the security guards actions and failed to properly supervise and train the same resulting in Plaintiff's false imprisonment, monetary losses, fear, and humiliation.

Moreover, it is important to note that the Supreme Court recently made it abundantly clear that Federal Rule of Civil Procedure 8(a)(2) only requires that the Plaintiff provide "a short and plain statement of the claim showing that the [he] is entitled to relief." Swierkiewicz, 534 U.S. at 512.  Because the Plaintiff has provided this Court and the Defendant with "a short plain statement" illustrating his entitlement to the relief requested granting Defendant's motion at this stage in litigation would allow Defendant, in practical terms, to circumvent the mandates espoused by a unanimous Supreme Court. Justice Thomas, writing for the Court, explained: "[t]his simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512.

The Court's rationale envisions a timeline, with a Plaintiff's requirement to meet notice pleading standards in the early stages, discovery in the middle stages up to and including depositions of plaintiffs and any motions for summary judgment once unmeritorious claims are evinced through fruitful discovery.  Thus, dismissal is unwarranted as the Plaintiff has met his pleading burden and exceeded his required showing by demonstrating his ability to establish the elements necessary to proceed on



claims of negligent supervision and training. See generally, Swierkiewicz v. Sorema, 534 U.S. 506 (2002).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Defendant's Partial Motion to Dismiss.

Respectfully submitted,

_____
Jimmy A. Bell, Esq.
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD 20772
(301) 599-7620
(301) 599-7623 (Fax)
Counsel for the Plaintiff
Bar No. MD 14639


_____
Janelle N. Richards, Esq.
Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD 20772
(301) 599-7620
(301) 599-7623 (Fax)
Counsel for the Plaintiff
Bar No. MD 16520

